In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Elizabeth A. CAVENDISH-SOSINSKI, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Elizabeth A. CAVENDISH-SOSINSKI, Respondent.

Supreme Court

*No. 03–1697–D. Decided March 26, 2004.*

2004 WI 30

(Also reported in 676 N.W.2d 887.)

¶ 1. PER CURIAM. We review the recommendation of the referee that the license of Elizabeth A. Cavendish-Sosinski to practice law in Wisconsin be

suspended for nine months as discipline for professional misconduct.[1] That misconduct as alleged in the Office of Lawyer Regulation (OLR) complaint involved 25 alleged violations of the Rules of Professional Conduct involving 9 separate client matters. The misconduct allegations include Cavendish-Sosinski's pattern of inattention to and failure to act with respect to client matters and to respond in a timely and sufficient manner to the OLR inquiries regarding her alleged misconduct. The pattern consisted of Cavendish-Sosinski's repeated violation of the attorney's duty to: (1) act with reasonable diligence as required by SCR 20:1.3; (2) keep a client reasonably informed about the status of a matter and to properly reply to reasonable requests for information as required by SCR 20:1.4(a); (3) comply with investigations of misconduct by the OLR as required under SCR 22.03(2), as well as the district investigative committee's inquiries as required under SCR 22.04(1); (4) failure to act to protect a client's interest as required by SCR 20:1.16(d); and (5) willful failure to provide information relevant to an OLR investigation as required by SCR 22.03(6).

---

[1] On December 16, 2003, this court granted the Office of Lawyer Regulation's (OLR) motion to temporarily suspend the license of Elizabeth A. Cavendish-Sosinski to practice law in this state pursuant to SCR 22.03(4), for her willful failure to respond or cooperate with the OLR's investigation into allegations of her misconduct. Cavendish-Sosinski filed no response to the motion or to this court's order requiring her to show cause, in writing, why the OLR's motion should not be granted. Accordingly, Cavendish-Sosinski's license to practice law was ordered temporarily suspended as of December 16, 2003, and until further order of the court. Her license remains under suspension.

¶ 2. In addition to recommending that Cavendish-Sosinski's license to practice law be suspended for nine months, the referee further recommended that prior to any reinstatement, Cavendish-Sosinski must demonstrate that her depression or mental health problems that might impair her ability to practice law are under sufficient control to permit her to practice law in accordance with accepted professional standards; also, that Cavendish-Sosinski pay the costs of these disciplinary proceedings now totaling $1373.77.

¶ 3. We determine that the misconduct as established in this proceeding warrants a suspension of Cavendish-Sosinski's license for nine months. We also determine that prior to any reinstatement, Cavendish-Sosinski shall demonstrate that her depression or mental health problems that might impair her ability to practice law are sufficiently controlled to permit her to practice law in accordance with accepted professional standards; and finally, we determine that Cavendish-Sosinski shall pay the costs of these disciplinary proceedings in the amount specified.

¶ 4. The respondent, Elizabeth A. Cavendish-Sosinski, was admitted to practice law in this state on January 18, 1994, and has practiced in Pewaukee. She has never previously been the subject of a disciplinary proceeding except, as noted in footnote one, her license has been temporarily suspended for her failure to cooperate in the OLR's investigation of these alleged disciplinary infractions. Her license remains temporarily suspended pursuant to this court's December 16, 2003, order.

¶ 5. The OLR filed a complaint in this court on June 26, 2003, alleging 25 violations by the respondent of the Rules of Professional Conduct involving 9 separate client matters. After the complaint was filed,

Attorney Richard M. Esenberg was appointed to act as referee in this matter. Referee Esenberg subsequently filed his referee's report detailing the OLR's attempts and repeated failures to contact and serve Cavendish-Sosinski who had informed the OLR that she was abandoning her practice and moving to Louisiana. Although many of the attempts to serve Cavendish-Sosinski with the various documents related to this disciplinary proceeding proved futile, ultimately service of the OLR complaint and order to answer was completed on July 29, 2003.

¶ 6. After Cavendish-Sosinski failed to answer the complaint or otherwise appear within 20 days as required by SCR 22.14(1), the OLR filed a motion for default judgment which was served by mail on Cavendish-Sosinski at her last known address. Again, she did not respond to that motion, nor did she then answer the complaint or appear in the action. Because of the numerous futile attempts to engage Cavendish-Sosinski in this disciplinary proceeding, the referee recommended that she be found in default and that the allegations of the OLR complaint be deemed to be established.

¶ 7. Neither the OLR nor the respondent has appealed from the referee's report.

¶ 8. We agree that Cavendish-Sosinski is in default and accordingly, we deem the referee's findings to be established and supported by the allegations in the OLR complaint. *See In re Disciplinary Proceedings Against Jackson,* 221 Wis. 2d 616, 585 N.W.2d 151 (1998). The complaint's allegation of 25 violations of the Rules of Professional Conduct and the rules concerning lawyer regulation will be briefly discussed.

207

CLIENT J.V.P.—COUNTS 1–2

■

¶ 9. Cavendish-Sosinski was appointed in July 2000 in federal court to represent J.V.P. in a habeas corpus matter. Respondent and J.V.P. subsequently disagreed about the representation and the respondent's failure to communicate with him. J.V.P.'s initial complaints to the OLR concerning these problems were dismissed but that investigation was subsequently reopened focusing on Cavendish-Sosinski's alleged failures to communicate with J.V.P. after March 2001.

¶ 10. J.V.P. wrote to Cavendish-Sosinski on April 11, 2001, asking her questions about his case, but she did not respond. Then, on April 30, 2001, a staff member at the Wisconsin Department of Corrections (DOC) attempted to set up a telephone conference between Cavendish-Sosinski and J.V.P.; although the DOC staff member left a message and number for Cavendish-Sosinski to call, she did not return his call. On May 2, 2001, the staff person again tried calling her, but Cavendish-Sosinski's voice mailbox was full.

¶ 11. On May 21, 2001, on June 19, 2001, and again on June 26, 2001, an OLR staff member wrote to Cavendish-Sosinski regarding her failure to respond to J.V.P.'s request for information. Cavendish-Sosinski failed to respond to the OLR investigative letters.

¶ 12. On July 26, 2001, a fourth OLR investigative letter was sent to Cavendish-Sosinski. This time she responded in a letter dated August 7, 2001, stating that she had not answered J.V.P.'s April 11, 2001, letter because "I was trying to professionally deal with his blatant accusation that I had lied to him in this office."

¶ 13. The OLR subsequently referred this matter to the district committee for investigation. On May 23,

2002, and again on June 5, 2002, the district committee investigator wrote to Cavendish-Sosinski requesting that she contact him; on May 29, 2002, the investigator attempted to contact her by telephone. Cavendish-Sosinski did not respond to these letters or return the phone call; she did not cooperate with the district committee's investigation until after she had personally been served with a notice to appear.

¶ 14. Based on this course of conduct, the referee concluded that the respondent had committed the violations asserted in Counts 1 and 2 of the complaint. Specifically, the referee concluded that Cavendish-Sosinski's conduct constituted a failure to respond to reasonable requests by a client for information, in violation of SCR 20:1.4(a) and failure to cooperate with an OLR investigation and with a district committee, in violation of SCR 22.03(2) and 22.04(1).

### CLIENT J.A.E.—COUNTS 3–5

■

¶ 15. The OLR complaint alleged that Cavendish-Sosinski represented J.A.E. in a matter in Waukesha Municipal Court. Cavendish-Sosinski informed J.A.E. on August 9, 2000, that J.A.E. need not appear at a pretrial conference then set for August 21, 2000. That pretrial was subsequently rescheduled for August 23, 2000, but Cavendish-Sosinski was not notified of the new date.

¶ 16. When neither J.A.E. or Cavendish-Sosinski appeared at the rescheduled pretrial conference, a default judgment was entered against J.A.E. in the Waukesha Municipal Court. On September 6, 2000, Cavendish-Sosinski asked the court to reopen the de-

fault judgment asserting lack of notice. That request was granted and a new pretrial was scheduled for October 10, 2000.

¶ 17. On September 20, 2000, Cavendish-Sosinski wrote to J.A.E. informing her of that new date, but telling J.A.E. that she need not appear. Cavendish-Sosinski also informed J.A.E. that informal negotiations were ongoing with the city attorney.

¶ 18. Neither Cavendish-Sosinski nor her client J.A.E. appeared at that October 10, 2000, pretrial; as a result, a default judgment was again entered against J.A.E. who had not appeared based on the respondent's information. Cavendish-Sosinski did not inform J.A.E. of that default judgment.

¶ 19. The OLR complaint further alleged that during her representation of J.A.E. Cavendish-Sosinski failed to respond to various requests for information about the status of the case. Cavendish-Sosinski later explained her failure on the ground that she had no legal assistant and her office systems were in disarray at the time.

¶ 20. In April of 2001 J.A.E. filed a grievance with the OLR against Cavendish-Sosinski. The OLR staff on April 24, 2001, wrote a letter to Cavendish-Sosinski requesting her written response to the J.A.E. grievance. Cavendish-Sosinski did not respond nor did she respond to a second OLR request sent to her on May 24, 2001. After personal service of the OLR's third request requiring a response by June 14, 2001, Cavendish-Sosinski finally responded on June 22, 2001. Thereafter, however, she failed to respond to two additional letters from OLR staff seeking supplemental information.

¶ 21. After the matter was referred to the OLR's district committee, the district committee's investigator

210

on May 23, 2002, and June 5, 2002, wrote to Cavendish-Sosinski requesting that she contact him; on May 29, 2002, the investigator also attempted to contact her by telephone. Cavendish-Sosinski did not respond to the investigator's letters or to his phone call; she did not cooperate with the district committee's investigation until after she had been personally served with a notice to appear.

¶ 22. Based on this course of conduct, the referee concluded that respondent had committed the violations alleged in Counts 3, 4, and 5 of the OLR complaint. Specifically, the referee concluded that Cavendish-Sosinski's conduct violated the attorney's duty to act with reasonable diligence as prescribed by SCR 20:1.3; constituted a failure to keep a client informed as required by SCR 20:1.4(a); and was a failure to cooperate with an OLR investigation and with a district committee as required by SCR 22.03(2), SCR 22.03(6) and SCR 22.04(1).

## CLIENT E.B.—COUNTS 6–8

■

¶ 23. The OLR complaint alleged that in March 1998 Cavendish-Sosinski was appointed by the state public defender (SPD) to represent E.B. in a postconviction criminal matter. Between April 1998 and January 1999 the respondent failed to meet with E.B. even though she had repeatedly promised she would do so once she had obtained his court file and other information and documents. Cavendish-Sosinski later scheduled a personal meeting with E.B. for January 1999 but then cancelled it, citing the need for more information.

¶ 24. Although Cavendish-Sosinski had written to E.B. 11 times after her appointment in March 1998 to April 27, 2000, most of those letters were in direct

response to the state public defender's demands that she write to E.B. On May 10, 2000, in response to one of those SPD demands, Cavendish-Sosinski had an hour-long telephone conference with E.B. That was the first and only time she ever talked with E.B.

¶ 25. Between January 2001 and August 2001 the SPD's office wrote several messages to and left several telephone messages for Cavendish-Sosinski; however, she called back only once and then only left a message. In August 2001 the SPD's office wrote to Cavendish-Sosinski informing her that she was being replaced in the E.B. matter, that steps were being taken to decertify her from further SPD appellate appointments and that the matter would be referred to the OLR. E.B. had, however, in June 2001 already filed his own grievance with the OLR concerning Cavendish-Sosinski. After E.B.'s grievance, the OLR wrote to Cavendish-Sosinski three times asking her to respond and supply information about the situation. She did not respond until she had been personally served with the OLR's fourth letter requesting information. In her response to that fourth request, Cavendish-Sosinski admitted that her representation in the E.B. matter had been "lax"; she explained that she had been suffering from depression.

¶ 26. E.B.'s grievance was subsequently referred to the OLR's district committee for investigation. The district's investigator wrote to Cavendish-Sosinski on May 23, 2002, and again on June 5, 2002, requesting that she contact him. In addition, on May 29, 2002, the investigator attempted to contact her by telephone. Again, Cavendish-Sosinski did not respond to the letters or phone call, and did not cooperate with the district committee's investigation until after she had been personally served with a notice to appear.

¶ 27. Based on this course of conduct, the referee concluded that the respondent had committed the violations as alleged in Counts 6, 7, and 8 of the OLR complaint. Specifically, the referee concluded that Cavendish-Sosinski's conduct constituted a failure to act with reasonable diligence and promptness, in violation of SCR 20:1.3; a failure to promptly respond to reasonable requests for information, in violation of SCR 20:1.4(a); and a failure to cooperate with an OLR investigation and a district committee's request for information, in violation of SCR 22.03(2) and 22.04(1).

CLIENT R.G.—COUNT 9

■

¶ 28. The OLR complaint alleged that on July 25, 2000, R.G. retained Cavendish-Sosinski to represent him in a criminal matter. Approximately two months later, however, R.G. retained successor counsel. Then, on August 22, 2001, R.G. filed a grievance with the OLR against Cavendish-Sosinski alleging professional misconduct. The OLR staff, on two separate occasions, requested that Cavendish-Sosinski supply information regarding the R.G. matter but she failed to do so. On November 14, 2001, she finally responded to the R.G. grievance as requested by the OLR.

¶ 29. Thereafter, the R.G. matter was referred to the district committee for investigation. Again, Cavendish-Sosinski did not respond to the first two letters and telephone call from the district's investigator; and again she did not cooperate with the district committee until she had been personally served with a notice to appear.

¶ 30. Based on this course of conduct, the referee concluded that the respondent had committed the violations as alleged in Count 9 of the OLR complaint.

Specifically, the referee found that Cavendish-Sosinski's conduct violated the attorney's duty to cooperate with an OLR and district committee investigation as required by SCR 22.03(2) and 22.04(1).

## CLIENT R.T.—COUNTS 10–13

¶ 31. The OLR complaint alleged that in April 2001 Cavendish-Sosinski was appointed by the SPD to represent R.T. on his appeal from a felony conviction. Cavendish-Sosinski initially made several contacts with R.T. promising to visit him to personally discuss his case. R.T., who was incarcerated, then made several attempts to contact Cavendish-Sosinski including several telephone calls. He also sent nine or ten letters to her to which she did not respond. Although R.T. could only place collect calls from prison, Cavendish-Sosinski instructed her legal assistant not to accept any collect telephone calls.

¶ 32. Beginning on July 10, 2001, R.T. made several requests to Cavendish-Sosinski for his transcripts; however, she never provided the transcripts to him. Although Cavendish-Sosinski claimed that she had ordered the transcripts, she never followed up with the court reporter to obtain the transcripts in a timely manner. As a result of her failure to file the transcripts with the court of appeals in a timely manner, R.T.'s right to appeal was thwarted.

¶ 33. R.T. filed a grievance with the OLR. The OLR staff subsequently sent Cavendish-Sosinski three requests that she respond to the R.T. grievance; she did not respond to any of the OLR's requests. After a fourth request was personally served on her, she finally submitted a response to R.T.'s grievance.

¶ 34. Subsequently, the R.T. matter was referred to the OLR's district committee for investigation. The district's investigator wrote two letters to Cavendish-Sosinski requesting that she contact him and he also made one attempt to contact her by telephone. Cavendish-Sosinski did not respond to the letters or the telephone call; she only cooperated with the district committee's investigation after she had been personally served with a notice to appear.

¶ 35. The referee, describing the R.T. grievance as "the most serious matter" in the OLR complaint, concluded that Cavendish-Sosinski had committed the violations as alleged in Counts 10, 11, 12, and 13 of the OLR complaint. Specifically, the referee found that Cavendish-Sosinski's conduct constituted a failure to act with reasonable diligence and promptness in a client matter as required by SCR 20:1.3; a failure to respond to reasonable requests for information as required by SCR 20:1.4(a); a failure to protect a client's interest as required by SCR 20:1.16(d); and a failure to cooperate with an OLR investigation and with the district committee as required under SCR 22.03(2) and 22.04(1).

### CLIENT L.C.—COUNTS 14–16

■

¶ 36. The OLR complaint alleged that in late summer of 2000 L.C. hired Cavendish-Sosinski to represent him after a bench warrant for L.C.'s arrest had been issued. Cavendish-Sosinski thereafter sent L.C. a retainer agreement and obtained from him payment of an additional $750 fee telling L.C. that she would attempt to quash the warrant. However, Cavendish-Sosinski thereafter took no action in the L.C. matter.

¶ 37. L.C. attempted to contact her on several occasions to learn the status of his case but was

unsuccessful. Cavendish-Sosinski did not speak with L.C. until March of 2001. L.C. wrote to her in April and June 2001 informing her that the continued existence of the bench warrant was interfering with his livelihood as an over-the-road trucker, and with his plans to marry and have his new wife join him in the trucking business.

¶ 38. L.C. subsequently filed a grievance against Cavendish-Sosinski with the OLR in January of 2002; he later submitted written materials substantiating his allegations against Cavendish-Sosinski.

¶ 39. Thereafter, Cavendish-Sosinski failed to respond to two OLR requests for information concerning L.C.'s grievance. Finally, she acknowledged that she had done no work on the L.C. matter and attributed that failure to her depression. The respondent thereafter refunded L.C. the $750 fee he had paid her.

¶ 40. Based on this course of conduct, the referee concluded that the respondent had committed the violations as alleged in Counts 14, 15, and 16 of the OLR complaint. Specifically, the referee concluded that Cavendish-Sosinski had failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3; had failed to promptly respond to reasonable requests for information and to keep her client informed about the status of the matter, in violation of SCR 20:1.4(a); and had failed to cooperate with an OLR investigation, in violation of SCR 22.03(2).

## CLIENT A.J.—COUNTS 17–19

¶ 41. The OLR complaint alleged that on November 8, 2001, A.J. retained Cavendish-Sosinski to represent him after he had been charged with a Town of Brookfield ordinance violation and two Waukesha

216

County misdemeanor criminal counts. A.J.'s mother paid $500 to Cavendish-Sosinski as an initial retainer to represent him. Cavendish-Sosinski sent notices of the retainer to each court and filed discovery requests.

¶ 42. On December 17, 2001, Cavendish-Sosinski told A.J.'s mother that A.J. did not have to be present for a hearing in the Town of Brookfield Municipal Court scheduled for December 20, 2001; as a result, A.J. did not attend that hearing nor did Cavendish-Sosinski. On December 22, 2001, A.J. received notice that a default judgment had been entered against him for his failure to appear at the December 20 hearing.

¶ 43. The OLR complaint further alleged that on December 27, 2001, a hearing was scheduled in the Waukesha County cases. When A.J.'s mother called Cavendish-Sosinski for the location for that hearing, Cavendish-Sosinski told her that an adjournment had been requested and granted. Because of the experience with the prior default judgment in the municipal court matter, A.J. called the Waukesha Court to confirm that the hearing had been adjourned. A.J. was informed that the matter was still on the court's calendar and that no adjournment had been requested or granted. A.J. appeared at the hearing *pro se* and was then told that had he not appeared, a bench warrant for his arrest would have been issued. The court rescheduled that hearing to January 8, 2002.

¶ 44. On December 27, 2001, the day of the Waukesha County hearing, the court's calendar clerk called Cavendish-Sosinski. Cavendish-Sosinski told the clerk that she believed that that hearing had been adjourned. Cavendish-Sosinski thereafter left on a trip to Louisiana but did not check the court file in order to confirm whether or not A.J.'s hearing had been adjourned.

217

¶ 45. On January 7, 2002, A.J. retained new counsel. By certified letter, A.J. requested a refund of his retainer from Cavendish-Sosinski and she thereafter withdrew as his counsel.

¶ 46. On January 14, 2002, A.J. and his mother filed a grievance with the OLR, and subsequently provided further written materials to substantiate their allegations against Cavendish-Sosinski. On April 3, 2002, the OLR staff requested Cavendish-Sosinski's written response to A.J.'s grievance; she failed to respond. Then on April 29, 2002, the OLR staff, via first-class, certified mail, sent Cavendish-Sosinski a second request for a response noting that she had failed to respond to the OLR's initial letter. Cavendish-Sosinski's secretary signed the certified receipt on May 7, 2002; however, again Cavendish-Sosinski did not respond to the OLR's request.

¶ 47. Subsequently, on May 13, 2002, the OLR staff, via certified letter and personal service, requested that Cavendish-Sosinski submit her written response, in person, at the OLR offices on May 20, 2002. Instead, Cavendish-Sosinski submitted a response via fax on that date. She also sent A.J. a copy of her response along with a $500 fee refund check. That refund was not made until May 21, 2002. Because Cavendish-Sosinski had not refunded A.J.'s fee immediately upon termination of the representation, A.J. had difficulty paying successor counsel.

¶ 48. Based on this course of conduct, the referee concluded that the respondent had committed the violations as alleged in Counts 17, 18, and 19 of the OLR complaint. Specifically, the referee concluded that Cavendish-Sosinski had failed to act with reasonable promptness and diligence, in violation of SCR 20:1.3; had failed to protect a client's interest, in violation of

218

SCR 20:1.16(d); and had failed to cooperate with an OLR investigation, in violation of SCR 22.03(2).

### CLIENT S.H.—COUNTS 20–21

■

¶ 49. The OLR complaint alleged that in December of 2001 S.H. retained Cavendish-Sosinski to represent her on a Town of Lisbon municipal charge, and that on December 20, 2001, S.H. paid Cavendish-Sosinski a retainer of $750.

¶ 50. Subsequently, Cavendish-Sosinski appeared in court on behalf of S.H. on two occasions and forwarded to S.H. copies of relevant police reports. S.H. also met with Cavendish-Sosinski several times including a meeting at Cavendish-Sosinski's office on March 11, 2002.

¶ 51. In April 2002, S.H. received a letter from the municipal court stating that a default judgment had been entered against her for her failure to appear at a scheduled March 15, 2002, hearing. Thereafter, S.H. and her husband repeatedly tried to contact Cavendish-Sosinski about the default judgment; Cavendish-Sosinski never returned their calls.

¶ 52. On May 24, 2002, S.H. sent a certified letter asking Cavendish-Sosinski why she had not appeared on S.H.'s behalf at the March 15, 2002, hearing. In that letter, S.H. stated that she had tried to call Cavendish-Sosinski several times regarding the status of the case including its disposition, but that Cavendish-Sosinski failed to return any of the calls. S.H. also noted that Cavendish-Sosinski had told her that she (Cavendish-Sosinski) had sent a letter to the court regarding resolution of S.H.'s case; however, according to S.H., her court file contained no such a letter. In addition, in her

219

certified letter, S.H. pointed out she and Cavendish-Sosinski had discussed favorable factors that could be pointed out to the court in S.H.'s case. S.H. wrote that Cavendish-Sosinski had not followed through on those items.

¶ 53. The OLR complaint further alleged that Cavendish-Sosinski was aware that S.H.'s husband had attempted to contact her several times about the case. Cavendish-Sosinski told him, however, that confidentiality rules prevented her from speaking to him about S.H.'s case; she also asserted that she had been unable to speak with S.H. directly. Cavendish-Sosinski also claimed that she thought S.H. had agreed to a resolution and sentence in her case at the March 11, 2002, meeting in Cavendish-Sosinski's office. Consequently, Cavendish-Sosinski considered S.H.'s file closed and had not associated S.H.'s May 24, 2002, certified letter with any necessity to act on S.H.'s case.

¶ 54. S.H. thereafter filed a grievance with the OLR. Again, the OLR requested a written response from Cavendish-Sosinski, and again Cavendish-Sosinski did not respond. Then by certified letter on September 17, 2002, the OLR again requested Cavendish-Sosinski to provide information regarding S.H.'s grievance. The certified mail receipt was returned showing that that second letter had been received and signed for by Cavendish-Sosinski's secretary on September 25, 2002.

¶ 55. Even though the OLR's certified letter directed Cavendish-Sosinski to file her written response to S.H.'s grievance no later than September 27, 2002, it wasn't until October 18, 2002, that Cavendish-Sosinski faxed a request to the OLR for an extension of time to respond to S.H.'s grievance. The OLR granted that

request giving the respondent until November 8, 2002, to respond. Cavendish-Sosinski, however, did not respond by that deadline.

¶ 56. The OLR complaint further alleged that on November 22, 2002, Cavendish-Sosinski was personally served with another OLR request for a response; on November 29, 2002, she faxed the OLR acknowledging that she had received the requests and she again asked for an extension of time to respond. She was granted another extension and finally, on December 12, 2002, Cavendish-Sosinski faxed her formal response to the OLR.

¶ 57. In that December 12, 2002, response Cavendish-Sosinski explained that during the time S.H. had attempted to contact her by certified letter, Cavendish-Sosinski was recovering from a year long clinical depression. She further reported that she had taken S.H.'s file home so she could work on it because she considered S.H.'s case, along with others, as one that needed to be dealt with "delicately" because the problems had been created or exacerbated by Cavendish-Sosinski's depressed state. According to Cavendish-Sosinski's response, those cases involved clients who were persistent or involved issues that had caused Cavendish-Sosinski to have panic attacks. This response further reported that there had been a fire at Cavendish-Sosinski's home in June of 2002 and that S.H.'s file had been destroyed in that fire, including the unopened May 24, 2002, certified letter from S.H. According to Cavendish-Sosinski, when S.H.'s husband began contacting her, her depression then manifested itself into an "ignore the situation as the case is closed" attitude.

¶ 58. Based on this course of conduct, the referee concluded that the respondent had committed the vio-

lations as alleged in Counts 20 and 21 of the OLR complaint. Specifically, the referee concluded that Cavendish-Sosinski had failed to respond promptly to a client's request for information, in violation of SCR 20:1.4(a) and had failed to cooperate with an OLR investigation, in violation of SCR 22.03(2).

CLIENT J.K.—COUNTS 22–24

¶ 59. The OLR complaint alleged that in June 2001 Cavendish-Sosinski was appointed by the state public defender to represent J.K. in two postconviction appeal matters. Later J.K. complained to the SPD office that Cavendish-Sosinski had failed to respond to his repeated inquiries regarding the status of his cases and that she had had no contact with him for almost a year. J.K. also contacted the court of appeals reporting his concerns about Cavendish-Sosinski's representation.

¶ 60. On May 9, 2002, and again on June 13, 2002, the SPD's office wrote to Cavendish-Sosinski about her lack of contact with J.K. Cavendish-Sosinski failed to respond to either letter. She also failed to respond to telephone calls from the SPD's office on August 6, 2002, and September 5, 2002.

¶ 61. The court of appeals subsequently ordered the SPD to file a report with the court addressing J.K.'s eligibility for appointment of substitute counsel in his two cases. In its response, the SPD's office advised the court that it believed J.K. was entitled to new postconviction counsel and that the SPD would appoint new counsel for him. In addition, the SPD asked the court to order Cavendish-Sosinski to immediately forward copies of J.K.'s court records and transcript to the SPD's appellate division so that that material could then be provided to his new counsel.

¶ 62. On September 9, 2002, and again on September 10, 2002, the court of appeals issued orders granting the SPD's request and ordering Cavendish-Sosinski to file affidavits of service with the court no later than September 20, 2002, proving that she had forwarded the requested items in both of J.K.'s cases. In these orders, the court of appeals warned that if she failed to provide the requested items, sanctions would be imposed. Cavendish-Sosinski mailed the requested items to the SPD on October 18, 2002.

¶ 63. After the SPD's office forwarded to the OLR a copy of the SPD's report filed in the court of appeals regarding Cavendish-Sosinski, the OLR commenced an informal inquiry into the matter and requested that Cavendish-Sosinski provide a written response on or before October 16, 2002. She did not respond.

¶ 64. Thereafter, by certified letter on October 18, 2002, the OLR again requested that Cavendish-Sosinski provide information regarding her conduct in the J.K. matter. That certified letter was signed for by Cavendish-Sosinski's secretary on October 21, 2002, but Cavendish-Sosinski did not respond to that request.

¶ 65. On November 22, 2002, Cavendish-Sosinski was personally served with the OLR's third request for a response in the J.K. matter. On November 29, 2002, Cavendish-Sosinski contacted OLR by fax acknowledging that she had received the requests and she asked for an extension of time to respond. The OLR granted her an extension until December 13, 2002.

¶ 66. On that date, Cavendish-Sosinski faxed her formal response to the OLR's investigation of the J.K. matter. In that response, Cavendish-Sosinski asserted that when she accepted the appointment to represent J.K., she was overworked and exhausted and suffering from clinical depression. She also acknowledged that

223

she should not have accepted new clients during that period; she claimed that during the time of her appointment in the J.K. matter, she had relied too heavily on a new assistant to log in and file documents as they were received in the mail. According to Cavendish-Sosinski's response, had she been operating at her normal mental capacity during that time, she would have been "on top" of the situation and would have ensured that all time limits were recorded and met; however, because she was so overextended with other cases and scheduled court hearings, she said she had not paid proper attention to cases—like J.K.'s—that she thought did not require immediate attention.

¶ 67. Based on this course of conduct, the referee concluded that the respondent had committed the violations as alleged in Counts 22, 23, and 24 of the OLR's complaint. Specifically, the referee concluded that Cavendish-Sosinski had failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3; also, she had failed to promptly respond to reasonable requests for information and to keep her client informed about the status of a matter, in violation of SCR 20:1.4(a); and finally she had failed to cooperate with an OLR investigation, in violation of SCR 22.03(2).

### NONCOOPERATION WITH OLR INQUIRY— COUNT 25

¶ 68. The OLR complaint noted that based on information concerning Cavendish-Sosinski's personal situation that potentially impaired her ability to practice law—including her depression, and events like her secretary quitting, her spouse filing for divorce, her house being destroyed by fire, and her need for medical

treatment—the OLR had opened an investigative file regarding Cavendish-Sosinski's situation. The OLR staff sent her its initial investigative letter on November 15, 2001, but Cavendish-Sosinski did not respond within the 20 days as directed. The OLR then sent her a second request on December 17, 2001, and again, she failed to respond. The OLR's third investigative request was served on Cavendish-Sosinski on January 7, 2002. On January 13, 2002, Cavendish-Sosinski responded stating that she would provide the requested information addressing the issue of her depression and its effect on her ability to practice law; however, she never submitted such a written response. According to the OLR, the matter was then referred to the district committee for investigation.

¶ 69. The district investigator, as had occurred in the other matters, attempted to contact Cavendish-Sosinski three times including one attempt to contact her by phone. Again, she did not respond to the letters or the phone call; she only responded after being personally served with a notice to appear.

¶ 70. Based on this course of conduct, the referee concluded that the respondent had committed the violation as alleged in Count 25 of the OLR complaint. Specifically, the referee concluded that Cavendish-Sosinski had failed to cooperate with an OLR investigation and with a district committee, in violation of SCR 22.03(2) and 22.04(1).

¶ 71. Finally, the OLR complaint noted that on February 5, 2003, the OLR received a letter from Cavendish-Sosinski stating that due to her depression, she was abandoning the practice of law and moving to Louisiana to pursue an alternate graduate degree. In this letter, Cavendish-Sosinski claimed that she had, in effect, closed her law practice; however, she reported

225

that she still employed a staff person to forward legal mail and messages and to retrieve items from her files to permit Cavendish-Sosinski to respond to other requests for information. In addition, Cavendish-Sosinski informed the OLR that as of January 2003, her practice was limited to six clients with active files, and that four of those files would be resolved by March 2003. The remaining two, Cavendish-Sosinski claimed, were proceeding through the criminal postconviction system. Cavendish-Sosinski also asserted that she did not intend to apply for a license to practice law in Louisiana.

¶ 72. With respect to Cavendish-Sosinski's claim that her conduct was attributable to her chronic clinical depression, the referee wrote:

> Her failure to participate in this matter makes it impossible to place much, if any, weight on this as a mitigating factor. There is no way to determine what role such depression may have played in her misconduct. However, claimed depression, combined with, not only neglect of clients' interest, but of her own interest in cooperating with the OLR to avoid exacerbation of her situation, suggests an inability to conform her conduct to that required of her. In this light, protection of the public dictates that she be required to address any mental health issues she might have prior to resuming the practice of law. I recommend, therefore, that the OLR's request that she demonstrate, as a condition of reinstatement, that any mental health problems that might impair her ability to practice law in accordance with accepted professional standards are appropriately controlled, be granted.

¶ 73. We adopt the findings of fact and conclusions of law set forth in the referee's report and we determine that the seriousness of Cavendish-Sosinski's misconduct as established in this proceeding warrants

the suspension of her license to practice law in this state for a period of nine months. We also determine that prior to any reinstatement of her license, Cavendish-Sosinski must demonstrate that her depression or mental health problems that might impair her ability to practice law are under sufficient control so that she would be able to practice law in accordance with accepted professional standards. Finally, we direct that Cavendish-Sosinski be ordered to pay the costs of these disciplinary proceedings now totaling $1373.77.

¶ 74. IT IS ORDERED that the license of Elizabeth A. Cavendish-Sosinski to practice law in Wisconsin is suspended for a period of nine months commencing as of the date of this opinion.

¶ 75. IT IS FURTHER ORDERED that as a condition of reinstatement of her license to practice law following the period of suspension, Elizabeth A. Cavendish-Sosinski be required to submit a report from a psychiatrist approved by the Office of Lawyer Regulation concerning her mental condition and demonstrating that her depression or mental health problems that might impair her ability to practice law are sufficiently controlled so that she would be able to practice law in accordance with accepted professional standards.

¶ 76. IT IS FURTHER ORDERED that within 60 days of the date of this order Elizabeth A. Cavendish-Sosinski pay to the Office of Lawyer Regulation the costs of this proceeding totaling $1373.77, provided that if the costs are not paid within the time specified and absent a showing to this court of her inability to pay the costs within that time, the license of Elizabeth A. Cavendish-Sosinski to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 77. IT IS FURTHER ORDERED that if she has not already done so, Elizabeth A. Cavendish-Sosinski

must comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.